Next case is 06-1455. 3, Mark Welding, the Maya Products. Mr. Zito, are you ready? Yes, your honor. You retain seven minutes for rebuttal. That's correct. Only on rebuttal on the issues that were raised by the attorney today. I think it should be the same issues. Thank you. Good morning, Mr. Chairman.  Please support, I'm Joseph Zito here on behalf of the plaintiff's appellate, Mark Welding. The issues in this case are interrelated. And the primary issue is whether or not a fair and full opportunity was given on the issue of damages by the Co-Trial Court of Law. The issue of infringement was properly tried and the correct decision. In this case, the plaintiff was the inventor and also made their own product. Made their own product to the market. The product of the plaintiff was an aftermarket product. It was added to the defendant's product, Meyers' Pops. It's an aftermarket product that allowed for automatic raising and lowering. Defendants sold to, through the distributor network with the approval of, plaintiffs sold into the defendant's distributor network with the approval of the defendant, with letters from the defendant saying it was a nice product. Around 2000, 2001, the defendant, Mark Plows, decided to upgrade their controller. And in that process, decided to add an automatic raise and lower feature into the controller itself. We believe that the evidence shows that they got this idea because of the aftermarket product, the aftermarket product of the plaintiff. Once they added that into their controller, the plaintiff's market dried up. You can't sell the aftermarket if the original product already contains this feature. This is usually a very limited time, so let's get right to the issue of damages. I think the court's aware of all the facts and circumstances of the situation. Where did the court make its irreversible error in the damages? The trial court made a reversible error in not allowing the jury to consider any of these factors, the activities of the parties in coming to any determination of willfulness. The court took willfulness from the jury on the simple basis that after the defendant was sued, they asked their own internal engineers, do you think we infringe? Internal engineers said, no, we don't think so. And the trial court said that alone, that one activity alone is enough to wipe out any inference, any willfulness going to the jury. Well, the only inference to be drawn, though, when you said, but looking at it from another point, your only evidence is they didn't get an opinion of counsel. They didn't get an opinion of counsel. The opinion they got from the engineers was not competent. Did you put out evidence that it wasn't competent? Yes, we did, and I cite that in the brief. The engineers didn't understand the difference between validity and infringement. They came up with a list of factors where the two products were different. They didn't look at the claims. The engineers admitted, one of the engineers came and testified in a deposition at trial that the eight reasons he came up with in the original letter were all wrong, and he had two different reasons that came from trial counsel. So we showed that he didn't know, and the other engineer admitted on the record that he's not a person competent to make that determination, and that was in our brief. We showed that that was not a competent opinion. What the judge said on granting some of the judgments, what doesn't matter if they were right or wrong, the corporation acted reasonably by asking their internal engineers. The judge granted a motion, a 50-year motion, on the chairman, right? Correct, correct. He's indicating there was insufficient evidence to go to the jury. And we believe that was wrong as a matter of law. Like I said, the evidence of the interaction of the parties, that they got it from our party, that they didn't get a competent opinion, and we elicited testimony at trial from the president who said that he had made no unique false statements. Where's the clear error made by the judge? Because we can only divorce the granting of the 50-year motion on a clear error standard. Well, a clear error is that there is—that you can— to make a determination of fact as to whether or not the activities were willful. So his clear error of law was not allowing him to go to the fact finder. There was sufficient fact as a clear error of law. We don't have to show to the judge there is willfulness. We really need to show that there was enough evidence for that willfulness to go to the fact finder. And the other factor here was the actual knowledge. And the only evidence on natural knowledge was this distribution of brochures, correct? Distribution of brochures, the letters from Myers saying this is— you work with the plow, it doesn't void your warranty. The interaction between the inventor, the owner or the plaintiff, and the individuals that— he went to every—every time they did a seminar, every once a year or twice a year, when they did a instructional seminar for the jurors, he was there with his product talking to people. They knew about the patent. They knew about the product. That was the evidence of knowledge. And despite that, they also had—obviously had knowledge as of the date that the suit was filed. They got the letter from counsel, and they didn't stop manufacturing the product for another nine months. So at least that period, they definitely had notice. Notice was not a question as of December 2004. Prior to that, there was an issue. There was a factual issue that, again, should have gone to the jury. This also interplays into the testimony issue, the same factual background. We think the plaintiff, the plaintiff's president, had sufficient background in the industry to testify as to what he would have asked for as the police of the world. He was allowed to testify— What does that mean? I mean, sufficient background in the industry? I mean, obviously he has a view. Nobody's disputing. He probably has a view as to what he thought it was worth. But what does it mean, background in the industry? He wasn't qualified as an expert, correct? Correct. Are you contending that he should have been qualified as an expert? Is that the dispute here with the district court judge, that he should have qualified as an expert? No, we should—what the dispute was, all parties to the judge agreed that he should be able to testify as to the background knowledge. He sold the devices. He made the devices. He knows what they cost. He knows what his profit was. But he wasn't allowed to offer the last little piece, which was— And because of that, I would have asked for a royalty in the—I'll pick a number—in the 50— He made a $200 profit on the last piece. He made a $50 profit on the first piece. So he said I would have made—I would have expected a reasonable royalty less than my profits of $200, but more than my original profits of $50, so somewhere between $50 and $100. He wasn't allowed to make that final statement. And that combined with the judge's instructions, where the judge said the only testimony you heard from as to what a reasonable royalty is came from the expert. And we cited that in our brief. You didn't have an expert. We did not have an expert. The defendants had an expert. But because Mr. Rasha was not allowed to make that final step, make that final statement, that because of all these factors, I think, not from an expert standpoint, but from a person in the business, if I was sitting down at that hypothetical negotiation, I would have asked for, based upon these factors, the jury was led to believe that the only testimony on royalties was 1%. And that combined with the instruction that you can give— That's correct. The way the instructions were given, and you cited them there, along with the instruction of nominal damages. If a plaintiff hasn't told you what his damages are, you can give him nominal damages if he believes incorrect instruction and error of law. That combined with the instruction where the judge overemphasized— Expert testimony is only one of the 12 Georgia Pacific factors. It's not the only factor. The judge overemphasized that, saying, this is the royalty you can pick, or isn't that right? What percentage—I mean, if he had been allowed to testify, what percent? And what's the difference in terms of what he would have said? The 1% worked out to, I believe, there's a range of sales, about $17 per $2,500 system, which was discounted because of certain factors. The ground ratio, about $17. He would have testified between $50 and $100 of what he would have expected. So that's like five— Five or six. —times. Five or six times. But we're not talking a significant difference. He wasn't looking for 50% or 100% of what it would have been. He wouldn't have testified as a percentage because he's making it a product. It would have been a portion of his profits, a third or a quarter of his profit, depending on sales. Mr. Zito, did you object to the Georgia instruction? Yes, we did. But the part I cited actually was not in the jury instructions. These were part of the—added instructions from the judge. No, that was not part of the jury instructions. No, he gave— The nominal damage language was prior to, right? Well, that was part of the jury instructions. Part of the charge to the jury was the nominal damages, but it was not in the agreed jury instructions. It was added in by the judge while he was charging the jury. While he was charging the jury, prior to. The formal jury instructions did not contain the nominal damage language. The formal jury instructions that were agreed upon did not contain that. But he said, I'm now charging the jury. I believe it was part of his preface to the jury charge. He said, nominal. But during the charge, the other portions we cite in our brief were during, in the middle, and opposed to the middle of the jury charges that were not part of the agreed jury charges. But they didn't award them. Because of the way the jury charge was given, we can't determine whether or not the jury granted 1% thinking that was nominal. You see what I'm saying? We think 1% was a reasonable royalty. The jury could have understood that. Even if you think the royalty should be higher, you award nominal royalties, and the lowest number they heard was 1%. So that may have, we can't doubt the jury's mind, that may have in the jury's mind been what nominal meant. But going back to the issue of nominal damages, that was essentially the preamble to the jury instruction. Yes. Part of the formal jury instructions that were given to the jury. But the jury doesn't distinct, make a distinction between them. They didn't have written the formal instructions. They don't make a distinction between what is a preamble and what's an instruction. And when the judge said, I'm now going to charge you, after that statement, you made a nominal damages instruction. And then went on to read, mostly what we agreed to, and add some other interpretation to it. So I think it was part of the formal charge to the jury. Thank you, Mr. Giuliani. Welcome to your program time. We will have one minute to issue that. Five full minutes for you all. Thank you. Mr. Briggs. Thank you, Your Honors. Please support. My name is Alan Briggs. This is Peter Levan. Mr. Levan and I tried the case together. Let me address first the jurisdictional issue. We believe this court is without subject matter jurisdiction. And that is the very first point we discussed in our brief. We filed a motion to dismiss the lack of subject matter jurisdiction. And procedurally, let me just address how that came about. Well, if I could just direct you. I mean, we've got your briefs in motion. I just don't want the time to run out because I do have some questions on the willfulness issue. So perhaps if you have time later, you can address whatever you want. I'm reporting satisfaction. Let me ask you about the willfulness. Sure. Why wasn't there enough evidence to go to the jury in light of the fact that there had been evidence, there was no legal opinion here, there were questions raised during the process of animation with respect to the confidence of the non-legal opinion? Why wasn't that sufficient to go to the jury? There wasn't any evidence with regard to willfulness in all due respect, Your Honor. If this is a case where the testimony that came in in the plaintiff's case showed a company that did an incredibly outstanding job of responding properly and appropriately, there was no testimony, at least all the plaintiffs called was essentially, they called Mr. Warkola, the director of engineering. He testified. There's 145 pages of his testimony. There isn't any one suggestion of incompetency there. There isn't any challenge of incompetency in any respect whatsoever. I invite your attention to that testimony. I'm sure you probably read it, but I would invite you to read that. What you hear is a company who didn't know anything about the patent. Once they learned about the patent, they then had their director of engineering sit down and carefully review the patent and compare it to what their product was. He then had three other engineers separately and independently sit down and review the patent and review their product and go over everything to determine independently whether or not there was infringement. They then got together and went over it carefully, and they concluded they did not infringe it. They didn't have any question about that. They went through and identified in their answers and interrogators eight separate reasons why they didn't infringe. They made it very clear why they didn't infringe. There wasn't any doubt they didn't infringe in all due respect, and it was covered carefully, completely, thoroughly by the company. While apparellant counsel suggests that there was some challenge to the competency, I invite you to read that testimony if it wasn't the slightest suggestion. Well, what about the specifics you alluded to five minutes ago, which is that the testimony was that they weren't in a position to assess claim construction or whether they either infringed or not? Pure fiction. It bears no relationship to the record, Your Honor. Pure fiction. Just as many of the statements in the brief, they had no support in the record. I invite you to read Mr. Orkola's testimony. It was as thorough, as competent as a company could do. They had four, and then the president of the company, engineers, sit down and separately review it and say, we don't infringe. And while appellant's counsel said, we went through all eight reasons, did he disavow those? He didn't. Mr. Orkola got on the stand and said, that's why we didn't infringe. I reviewed it then. I review it now. We don't infringe. But what that company did was, then the lawsuit was filed at the end of December. But it wasn't served. They sent a letter, and the letters and exhibit, and they said, let's sit down and talk about it. They talked about it. They couldn't resolve it. The lawsuit was served at the end of April. And then Judge Giles immediately held a pretrial conference and ordered an immediate mediation. The parties asked if they could get it to the record. The parties then met in early August, just three or four months after the lawsuit was filed, and they couldn't resolve it at that mediation. And the company said, we don't infringe. Nonetheless, we'll take it off. We don't want any question whatsoever as to our good faith in the industry. They removed it. They took all of the product off the market. They changed their marketing brochures. They moved heaven and earth, even though they didn't infringe. Okay. I think you've answered the question. Thank you. What about the expert testimony here and the very general testimony? What about the fact that there were other jury-specific factors? Why should this individual have been involved in getting his hearing about how much he was being charged and explaining what the basis of it was? Well, first, as to the other jury-specific factors, at least when I look at the 15 factors, and the last one being the hypothetical, the 14th being the expert, Mr. Areci went through and held his counsel on each of those factors about which he had any knowledge. And he offered evidence as to the problems, as to the history. All of the Georgia-Pacific factors where Mr. Areci had any knowledge whatsoever, he offered that. That was in evidence. There was no question. All of those Georgia-Pacific factors were met. The only other one was number 14 in Georgia-Pacific, which says expert testimony with regard to the hypothetical negotiate, expert testimony as to a reasonable royalty. Mr. Areci said, I don't know anything about licensing. I have no opinion with regard to a reasonable royalty. I've never had any negotiations. I've never established a figure. I don't know anything about that. The law is absolutely clear that he didn't have any foundation to give an opinion. Rule 701 and 702 of the Federal Rules of Evidence make it clear that he's not qualified to give expert testimony or opinion testimony of a layman, either one. The rules make it clear you can't follow what's under real expert testimony under 701 through 702. He didn't have any basis whatsoever to get in to say what he says, what the counsel said, and what he said at trial. What he liked to do is have Mr. Areci get on the stand and say, here's what I would have liked to have gotten. That just isn't relevant. That's just pure speculation as to after the fact wish list, the hypothetical negotiation, which is factor 15 in Georgia-Pacific, calls for what a prudent man would do, the objective prudent person, and it's prudent licensor and prudent licensee. All of the evidence goes to that. Mr. Areci is a very prudent person, a very prudent welder, a very prudent man, a very nice man, no question about that. And he honestly said, I don't know anything about royalties. I just don't know anything about that. That's what he said. He's a prudent, honest man, and that's what he said. Well, he was a prudent, honest man. He said, I don't know anything about that. And in the normal court, we don't let people testify about things they don't know something about. And let me address that. Mr. Briggs, going back to the issue of royalties, is it fair or is it proper for an engineer to look at a patent and make a determination as to the validity of the patent? It's not un-infringement, but un-validity. I don't know. It's supposed to depend on that particular engineer. For the most part, I think validity is a legal question, is what I think about. But there wasn't any testimony as to validity. He didn't, Mr. Wakola specifically said that. He testified. He limited his testimony to infringement. Yes, sir, he did. Sometimes I think that engineers probably have a better understanding of infringement claims than lawyers do. Could well be. He said specifically. It had nothing to do with that. But aside from that, they're much more practical and willing to take the issues that lawyers seem to legalize. But the eviction and internal determination made by an engineer on the issue of infringement validity is sufficient to overcome a willful charge of infringement. Well, that's a factual question that the trier of fact has to listen to and make a judgment under Rule 50 as to that evidence that he's heard. Is that sufficient evidence that if that were to go to the jury based upon that evidence, could that support a verdict? That's what Rule 50 is all about. So you've got to sort of listen to the testimony. I mean, I could hypothesize an engineer who conceivably, you know, the facts would be such to say, well, that should go, and others that shouldn't. That's why I think you look at it as a, I think the law, as the court indicated, is to use the discretion standard as to did Judge Iles properly apply the test. He read it. He heard it. He listened to it. He listened to the witnesses. And it was so clear that what that company did was something that was as good as a company response could be to even suggest it's willful bears no relationship to reality in all due respect. Could there be an engineer where you'd see it differently? No. Perceivable? No. That wasn't this case. Let me address the jurisdiction. It is an important point. This, and my belief is zero here with regard to reversal, but separate and apart from that, this court has no jurisdiction. Was there a meeting of the minds that the payment satisfied just through the determination of the payment? Absolutely. The meeting of the minds occurred as a matter of law. The law is absolutely clear that where there is a judgment and there is a check tendered in accordance with that judgment for a full payment of it, and either the check or an accompanying letter says this is in full satisfaction of that judgment, acceptance of that as a matter of law in Maryland where this was accepted and in every state in this country pursuant to rule. But full satisfaction of the final amount says nothing about the satisfaction of any additional amounts that might be in dispute. Clearly those additional amounts beyond that amount are subject of a dispute, correct? So why can't full satisfaction of the final judgment be satisfaction of the amount that you've been found, but why would that necessarily get rid of, eliminate of the additional amounts that are in dispute? Because there was a disputed amount at that point in time. This is the position of Meyer Product. It didn't know anything. The finding of infringement was improper. Meyer had the right to appeal the judgment. The judgment was on May 24th. The notice of appeal is on June 2nd. At that point in time, Meyer says to itself, I have the right to appeal. But if I can resolve this for the $21,000 and be done with it and be done paying lawyers and dealing with this, I'd rather do it. And I'll give up my right to appeal if I can resolve it. That's a disputed amount. They think money's owed to them. We think it's not. We send a check. If you accept that check, it's made clear this is to resolve that judgment. And that check says, or an accompanying letter says, this is in full satisfaction as a matter of law. It's over. And that is the Section 311 of the Uniform Commercial Code. It's the law in Maryland. It's the law in every state in the United States that that is a matter of law according to satisfaction. The Houghton case, which is the Supreme Court 1960 case, says payment of that judgment in and of itself doesn't mean that that is satisfaction. But you have to look at what there is. And in that particular case, in the Supreme Court case, there was a accompanying release that said it relates only to release of some specific liens. And each party was appealing. Each party had a dispute. They wanted it reversed. To the contrary here, Meyer gave up his right to appeal. This was a disputed amount. They tender a check and say, take this check to resolve a disputed claim. The law says that's it. It's over. As a matter of law, we believe this court has no jurisdiction. So we should dismiss the lack of jurisdiction? Yes, sir. We believe it's a matter of law. What about some of the cases that have followed off and saying, in essence, if the judgment that you receive is inadequate and you're challenging the amount of that judgment? You have to look at each one. That isn't what they say in all due respect. What they say is, again, that standing alone isn't enough. You have to look at what the facts are to see if there's any issue. If you look at the facts here, and that is if you look at the facts where there is a check that is tendered. First, there is the right to appeal at the time. On the 2nd of June, Meyer has the right to appeal. At that point in time, he tenders a check and a letter and says, this is it. And those are the right exact words out of the statute. And on that, as a matter of law, you look at it and say, it's over because there's a basic fundamental rule of settlement of a disputed claim by acceptance of money at that point in time resolves it. You can look at other cases and where there are specific facts that make it clear it wasn't intended to resolve it. How comes one? There are others that do. Others don't. We point out the law that said, it becomes moot when this is, in fact, tendered, this is accepted, and the judgment is fully satisfied. We believe, as a matter of law, there is no jurisdiction. Thank you, Mr. Grish. Thank you. Mr. Zia, do you have a thought on this in more detail? I might be before. As far as the issue of jurisdiction and satisfaction, whether or not there was a resolution, I think we showed the facts in our applied brief that there was obviously no meeting of the mind, no resolution. And as a matter of fact, defendants counsel didn't even think there was a resolution. Why did he provide pages for the appendix? Why did he accept our brief? Why didn't he ask for it? But if the reference was to a final judgment, when you look at a final judgment, when the issue is defined and being conclusively disposed of, correct? The case law, correct. The case law is completely in our favor. And neither side is disputing it. The case law is split. There are cases that support their position, cases that support your position. It's not totally decided. But why don't you proceed? Why do you think it's not a final judgment? And why is there no jurisdiction? Why do we do have jurisdiction? Well, because there's no evidence. All the evidence surrounding the circumstances shows that there was no meeting of the minds. There was no resolution. Secondly, the check wasn't tendered or received until after the time it expired for them to file an appeal. They didn't file an appeal. There's no dispute over the $18,000 that they paid. Well, let me ask you just what is the issue here? I mean, they sent a letter with these terms and then the check. Are you saying that just by cashing the check, you didn't agree to the terms of the letter? Or are you saying that even agreeing to the terms of the letter, you didn't forego jurisdiction with respect to this appeal? The letter's in the record. There aren't any terms in the letter. It says the court wants to pay you $18,000 plus cost of interest. We're giving you a check because of what the court ordered. It doesn't say a full satisfaction of the dispute, a full resolution of the issues. It's not what it says. It says we're paying you the money the court ordered us to pay you. It doesn't say accept this in satisfaction or accord. Well, what does it say? Well, you want the... May I tender the letter? The letter is attached. May I tender the letter? It is attached. May I tender the letter? It is attached. Actually, I guess the letter technically is not in the record. It was attached to the motion. It was probably filed by a second judge. But you haven't disputed this is the letter? No, we don't dispute it. Okay, so full satisfaction of the final judgment. Right, but only the final judgment. Not of the issues that were made in dispute, that were on appeal. Not full satisfaction of appeal. Full satisfaction of the issues between the parties. We understood that letter. I received the letter. I received the letter B. We're on appeal. We know what the issues are on appeal. We're not appealing whether or not we owe you 1%. We agree we owe 1%. And here is our check for that 1%. We're proceeding forward with the other issues. Only of the final judgment. Not of the issues that are appealed. But, John, you're appealing the final judgment. No. Yes. You're not appealing the final judgment. Then what are you appealing? This letter is proceeded by correspondence back and forth between counsel, where the defendants tend to offer up more than twice that amount, which was specifically refused in writing. No, we are not settling disputed issues. Well, what's your answer to Judge Harris's question? Appealing the final judgment. No, we're not appealing the $18,000 part of the final judgment. We've all agreed that they owe at least that much money. We're appealing whether or not they owe more money, and that's what the case law supports, that if there's an additional amount of dispute, you can accept the amount that's not disputed and continue to argue about the additional amount. The case law supports that. And that's what we took the letter as being. Since we're not disputing the 1%, the dispute over something else, we're paying you the 1%. Yes. The additional factor here is the language is in full satisfaction. In full satisfaction of the final judgment. Correct. I mean, it's not just we're paying you the final judgment. Why? Here it is. This is the money. Correct. It's not full satisfaction of the dispute between the parties. It's full satisfaction of... The language, to be clear, is technical language. Legal technical language. It's just a full satisfaction of the final judgment. Full final judgment satisfaction is, in fact, a satisfaction of the final judgment. If you take... Which you appeal from. But the appeal then is maybe eliminated by the fact that you accepted the payment of the full final judgment. You can't look at four technical words in a letter and ignore all the surrounding correspondence between the parties, between the counsel. It was clear, beyond any doubt, that what was meant by that letter to both our side and the other side, if you realize, the day after that letter, there was no communication that said, now that this appeal has been resolved, let's stop spending money on briefs. Now this appeal has been resolved, let's... Why are we extending? The activities before the letter and after that letter don't support defense counsel's now interpretation of the letter. We have exchanged settlement offers back and forth for more than twice that amount, which we were absolutely specifically refused, to then say, somehow, kind of change their mind and took half as much money, without any agreement, without any meeting, without any resolution. And then after doing that, we continued to file briefs, spend money on the appendix, etc. After that letter, we got joint appendix pages. It's in our response. Joint appendix pages from the defendant. Why did he send us joint appendix pages if he thought that the issue was resolved? Well, did he ever come back after this and say, well, in light of the fact that we've reached this agreement, we want our money back, and this is a case of mutual appeal? No, he did not. He never asked for his money back because we continued the appeal. As a matter of fact, before he filed his brief, he called up and asked for a subpoena and asked for a two-week extension, which we gave him, purportedly because he needed more time to work on his brief, responding to our brief. He never said at that time, oh, and by the way, this case is resolved, so we don't even need to go forward. He never had that belief. He never expressed that belief, whenever after that letter. Mr. Ziegler, thank you very much. Case is submitted. I hope to address... Your Honor, may I briefly respond? No. Thank you, Your Honor. All rise. The honorable court is adjourned this afternoon at 2 o'clock p.m.